UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKY PANGBURN,

    Plaintiff

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civil Action No. 16-13393

HON. ARTHUR TARNOW
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

_____/

## REPORT AND RECOMMENDATION

Plaintiff Ricky Pangburn ("Plaintiff") brings this action under 42 U.S.C. § 405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #15] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #13] be DENIED.

## PROCEDURAL HISTORY

On August 26, 2013, Plaintiff filed an application for DIB, alleging a disability onset date of July 17, 2013 (Tr. 124). After the initial denial of the claim, Plaintiff filed a request for an administrative hearing, held in Detroit, Michigan before Administrative Law Judge ("ALJ") Ena Weathers (Tr. 26). Plaintiff, represented by Frank Partipilo, testified, as did

Vocational Expert ("VE") Pauline Pegram (Tr. 31-46, 46-53).  On July 2, 2015, ALJ Weathers found that Plaintiff not disabled (Tr. 12-22).  On August 4, 2016, the Appeals Council denied review (Tr. 3-7).  Plaintiff filed for judicial review in this Court on September 19, 2016.

## BACKGROUND FACTS

Plaintiff, born June 20, 1952, was 63 when the ALJ issued her decision (Tr. 22, 124). He completed 12th grade and worked as a programmer from February, 1982 to June, 2013 (Tr. 158).  He alleges disability due to arthritis with related pain and swelling (Tr. 156).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

He stood 5' 5" and weighed 201 pounds (Tr. 31).  Although formerly right-handed, he was currently left-handed due to shoulder problems (Tr. 31).  He was married and his youngest child was 32 (Tr. 32).  He and his wife supported themselves with two "very small" retirement pensions and wife's Social Security Disability payments (Tr. 32).  He held a valid driver's license and drove short distances twice a week (Tr. 32).  His doctor had not imposed driving restrictions (Tr. 33).  He did not experience problems reading or writing (Tr. 33).  He served in the Army but was assigned to "light duty" after an accident (Tr. 34).

Plaintiff stopped working in July, 2013 when his job was terminated (Tr. 34).  He had not sought other work due to his inability to sit for any meaningful period, the need to use a cane, a limp, and the need to elevate his leg three to four hours a day to alleviate pain and swelling (Tr. 34).  His dismissal was "partially" attributable to his need for a cane (Tr. 35). He currently received treatment for hypertension and sporadic treatment for leg problems (Tr. 35).  He took only Aleve and Advil for relief of swelling and body pain due to medication side effects of stomach ulceration from prescription pain medication (Tr. 35).  He had not

undergone surgery, attended physical therapy, or sought emergency treatment for the leg condition in "a long time" (Tr. 36). On a scale of one to ten, he experienced level "seven" to "nine" pain with the use of over-the-counter pain medication (Tr. 36). His doctor told him that his condition could not be improved (Tr. 37). He was unable to sit or stand for more than five to ten minutes and even with the use of a cane was unable to walk more than 100 yards (Tr. 37). He was able to lift up to 15 pounds with his left hand but was unable to perform any lifting on the right (Tr. 38).

Upon arising at around 6:30 a.m., he let out the dog, walked to the mailbox, had coffee, sat down, and had a brief walk around his yard (Tr. 38). He spent four to five hours each day in a reclining chair (Tr. 38). His housework was limited to doing dishes and tidying up (Tr. 39). As a result of nighttime sleep interruptions he took two afternoon naps (Tr. 39). He was able to dress himself but was "not good" at grocery shopping (Tr. 40). He accompanied his wife on her shopping trips (Tr. 39). He seldom used a computer due to his right arm falling asleep (Tr. 40).

In response to questioning by his attorney, Plaintiff reported that he used a cane due to right-sided weakness and because he was prone to stumbling (Tr. 40). His lower extremity condition had worsened since July, 2013 (Tr. 40). In his former work, Plaintiff spent around 50 percent of the workday moving machines (Tr. 41). The "programer" position consisted of both programming work and lifting up to 60 pounds (Tr. 42). During the workday, Plaintiff would sometimes "hide" from his supervisors to avoid heavy lifting (Tr. 42-43). His lower extremity pain was relieved by elevating his legs to heart level (Tr. 43). He was required to wear compression socks due to leg swelling (Tr. 43). At present, he spent up to six hours a day in a recliner with his leg elevated (Tr. 44). Due to right shoulder pain, he was unable to do any right-sided overhead reaching (Tr. 44). His right arm fell asleep anywhere

between five and thirty minutes after being after being in one position (Tr. 44).  On a "bad" days occurring twice a week, he did not get dressed and spent the entire day in a couch or chair (Tr. 45).

### B. Medical Evidence[1]

#### 1. Records Relating to Plaintiff's Treatment

In August, 1978, Max Karl Newman, M.D. noted that as a result of a 1973 vehicle accident, Plaintiff experienced shortening of the right leg with atrophy and sensory peroneal neuropathy and motor neuropathy (Tr. 235).

March, 2012 imaging studies taken following a "slip and fall" at work showed "minimal degernerative joint disease" of the right knee and right little finger (Tr. 206). Imaging studies showed "mild to moderate degenerative arthritic changes" to the right shoulder (Tr. 206).  May, 2013 treating records by Scott McPhilimy, D.O. note an evaluation for hyperlipidemia and hypertension (Tr. 214).   Plaintiff reported that he walked approximately one mile each night with his daughter and granddaughters (Tr. 214).  Plaintiff reported symptoms of anxiety, noting that he did "pretty well" taking Xanax on an as-needed basis (Tr. 214).   Dr. McPhilimy noted the conditions of "pain in limb" and "chronic pain/traumatic injury to leg" (Tr. 215).  He advised Plaintiff to continue to exercise on a daily basis for weight loss and cardiovascular fitness (Tr. 215).  He gave Plaintiff a handicap placard (Tr. 207, 215).

Dr. McPhilimy completed an assessment of Plaintiff's work-related activities, finding that Plaintiff was precluded from all ladder climbing; could stoop and crouch on only a rare basis; climb stairs occasionally; and twist frequently (Tr. 209).  He found that due to

---

[1]Conditions significantly predating the alleged onset of disability date of July 17, 2013 are included for background purposes only.

Plaintiff's physical limitations, he would be expected to miss work about four days each month (Tr. 209). He found that Plaintiff experienced "distractability" and concentrational problems due to pain and right leg weakness, numbness, and sensitivity (Tr. 209, 211). Dr. McPhilimy noted that Plaintiff "was deemed unfit for any physical endurance by VA . . ." (Tr. 209). He found that Plaintiff was unable to sit, stand, or walk for even two hours in an eight-hour workday and would be required to stop work to walk every 15-20 minutes for up to 10 minutes at a time (Tr. 210). He found that Plaintiff would be required to elevate his left foot above heart level for 75 percent of the workday and was unable to walk for less than one block (Tr. 210-211). Dr. McPhilimy found that Plaintiff was further limited by concentrational problems due to poor sleep hygiene and the medication side effects of nausea and "GI problems"[2] (Tr. 212).

Dr. McPhilimy's August, 2013 treating records note that Plaintiff had recently been terminated "as a result of economic downsizing" (Tr. 201). Plaintiff reported that his "lack of concentration" due to pain "had led to safety problems" at work (Tr. 201). Dr. McPhilimy noted that Plaintiff was currently taking only Tylenol, Aleve, and Ibuprofen due to the side effect of "gastric distress" while taking stronger pain medication (Tr. 201). Dr. McPhilimy noted "mild to moderate edema" despite Plaintiff's use of a support stocking (Tr. 202). Plaintiff declined a recommendation for prescribed pain medication due to its effect on his ability to drive and declined an offer for an orthopedic surgical evaluation (Tr. 203).

May, 2014 records by Dr. McPhilmy note Plaintiff's report of "increasing pain and difficulty with ambulation" (Tr. 239). Plaintiff reported that he had fallen recently but had

---

[2]In September, 2013, Dr. McPhilimy clarified that the limitations set forth in the assessment pertained to Plaintiff's conditions as of "the summer of 2013" (Tr. 231, 243).

not sustained injuries (Tr. 239). He reported that he was awaiting determinations "on disability through the state and through the VA" (Tr. 239). November, 2014 records by Dr. McPhilimy do not reference Plaintiff's leg or shoulder conditions (Tr. 242). The same month, Dr. McPhilimy composed a letter on behalf of the Plaintiff's application for VA benefits, opining that Plaintiff's right leg condition (resulting from the 1973 accident during Plaintiff's years of military service) worsened in the summer of 2013 (Tr. 246-249).

## 2. Non-Treating Sources

In October, 2013, Ron Marshall, PH.D. performed a non-examining assessment of the records pertaining to Plaintiff's psychological limitations on behalf of the SSA, finding only mild limitation in activities of daily living, social functioning, and concentration, persistence, or pace (Tr. 61-62).

In December, 2013, Harold Nims, D.O. performed a consultative physical examination, noting Plaintiff's report of a 1973 accident in which he sustained compound fractures of the right leg (Tr. (Tr. 216). Plaintiff reported ongoing right leg pain, swelling, and balance problems resulting in twenty to thirty falls in the past year (Tr. 216). He reported that he was required to elevate his right leg five to eight times each day due to swelling (Tr. 216). In addition to the lower extremity problems, Plaintiff alleged the inability to reach overhead on the right side due to moderate right shoulder pain (Tr. 216). He also reported chronic anxiety for which he used Xanax on an as-needed basis and the condition of uncontrolled hypertension (Tr. 216). Plaintiff stated that he was unable to walk more than half a block but was able to sit and stand without problems aside from swelling of the right lower extremity (Tr. 217). He reported that he prepared light meals, did light housecleaning, and shopped "when necessary" (Tr. 217).

Dr. Nims observed a "moderately antalgic gait" without unsteadiness or lurching (Tr. 218). He noted 4/5 right upper extremity strength and 5/5 of the left upper extremity (Tr. 219). He noted no atrophy (Tr. 219). In the lower extremities, Dr. Nims observed 4/5 strength on the right and 5/5 on the left (Tr. 219). Plaintiff was able to squat and bend without difficulty (Tr. 220). Dr. Nims concluded that Plaintiff was capable of "nonstrenuous type activities performed in a sedentary type setting" with "the ability to elevate his right leg from time to time during the workday" (Tr. 220).

Later the same month, Eric VanderHaagen, D.O. performed a non-examining assessment of the Plaintiff's physical conditions, finding the ability to lift a maximum of 10 pounds, sit for six hours a day and stand or walk for two, and perform limited pushing and pulling in the right-sided upper and lower extremities (Tr. 63-64). Dr. VanderHaagen found Plaintiff could climb ramps and stairs, balance, and stoop frequently; kneel, crouch, and crawl occasionally; and never climb ladders, ropes, or scaffolds (Tr. 64). He found that Plaintiff was limited to occasional overhead reaching with the right upper extremities (Tr. 65). Dr. VanderHaagen found that Plaintiff could do his past relevant work as a programmer as actually performed (Tr. 65).

C. **Vocational Expert Testimony**

Citing the *Dictionary of Occupational Titles* ("*DOT*"), VE Pegram classified Plaintiff's previous work as a tool programmer (combined with the job requirements of a drafter) as skilled and sedentary (exertionally "light" as described in the application for benefits and as exertionally "heavy" in Plaintiff's testimony)[3] (Tr. 47-48). The ALJ then

---

3

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or

posed the following question to the VE, describing an individual of Plaintiff's age, educational level, and work experience:

> [A]ssume a hypothetical individual with the past jobs that you just described. Further assume that this individual is limited to light work and is unable to climb ladders, ropes, or scaffolds; can occasionally push and pull with the right lower extremity and right upper extremity; must avoid concentrated exposure to humidity and extreme cold; have occasional overhead reach bilaterally. Would this hypothetical person be able to perform their past work? (Tr. 48).

The VE replied that the above-described individual would be able to perform Plaintiff's past relevant work as described in Plaintiff's application for benefits and as described in the *DOT*, modified by her own professional experience to the extent that she found that the overhead reaching limitations would not preclude the past relevant work (Tr. 49). She found that the need to change positions from standing to sitting for "one to two minutes every hour or two hours" and the use of a cane to ambulate on uneven surfaces would not change her testimony (Tr. 49). The VE testified that if the same individual were additionally limited by the need to be off task 25 percent of the workday due to "pain, fatigue, and the effects of medication," the individual would be unable to perform Plaintiff's former work or any other competitive work (Tr. 50).

In response to questioning by Plaintiff's attorney, the VE testified that the need to be off-task for more than 15 percent of the workday, elevate the legs above heart level for 75 percent of each workday, miss four days of work each month, or, the inability to sit, stand, or walk for only two hours in an eight-hour workday would preclude all work (Tr. 51-52). The VE testified that the inability to work around "moving . . . and dangerous machinery"

---

carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

on an even occasional basis would eliminate Plaintiff's past relevant work as "actually performed" (Tr. 53).

### D. The ALJ's Decision

Citing the medical records, the ALJ determined that Plaintiff experienced the severe impairments of "neuritis and pain of the right lower extremity; reflex sympathetic dystrophy; chronic right shoulder pain due to osteoarthritis; and obesity" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15). The ALJ found that although Plaintiff used anti-anxiety medication (on an as-needed basis) his psychological limitations were "mild" (Tr. 15).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for light work with the following additional limitations:

> Claimant is unable to climb ladders, ropes or scaffolds. Claimant's right upper and lower extremities are restricted to occasional pushing and pulling. Clamant must avoid concentrated exposure to humidity and extreme cold. Clamant is limited bilaterally to occasional overhead reaching. Claimant must be able to change from standing to seated position or vice versa for one to two minutes every hour to two hours without interference with work product. Claimant requires the use of a cane to ambulate on uneven surfaces (Tr. 16).

Citing the VE's testimony, the ALJ found that Plaintiff could perform his past relevant work including the job duties of programmer and drafter as generally performed in the national economy and as actually performed (Tr. 21, 49).

The ALJ discounted the allegations of disability. The ALJ noted that Plaintiff's testimony that he was required to lift up to 60 pounds at his former job was contradicted by his report made at the time of the DIB application (Tr. 21). The ALJ accorded only "partial weight" to Dr. McPhilimy's assessment on the basis that it "lack[ed] support in contemporaneous treatment records" and the "gross inconsistencies" between the assessment and Dr. McPhilimy's own treatment records (Tr. 20). The ALJ noted that Plaintiff's

allegations of disability were undermined by Plaintiff's ability to walk a mile each night with his daughter and granddaughters (Tr. 18). The ALJ noted that despite the 1973 accident, Plaintiff was able to work for many years (Tr. 20). She cited Plaintiff's testimony that his job termination resulted at least in part from "economic and industry reasons" (Tr. 20).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The Treating Physician Analysis

In his first argument, Plaintiff faults the ALJ for discounting Dr. McPhilimy's treating assessment of the work-related abilities. *Plaintiff's Brief,* 9, *Docket #13,* Pg ID 313. Citing SSR 96-2p, Plaintiff also contends that the ALJ failed to provide "good reasons" for declining to accord controlling weight to the treating source's opinion. *Id.* at 10-13 (*citing* 96–2p, 1996 WL 374188, *5 (July 2, 1996)).

Case law in effect at the time of the current application requires that "if the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight."[4] *Hensley v. Astrue*, 573 F.3d 263,

---

[4] The administration rescinded SSR 96-2p on March 27, 2017. *See Rescission of Social Security Rulings* 96-2p, 96-5p, and 06-3p, 82 FR 15263-01 (Mar. 17, 2017). Under the new rules, ALJs will weigh both treating and non-treating medical evaluations based on how well

266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir. 2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2)); SSR 96–2p, 1996 WL 374188, *5 (1996). In explaining the reasons for giving less than controlling weight to the treating physician's opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) the "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544.

Contrary to Plaintiff's argument, the ALJ's rejection of Dr. McPhilimy's undated "disability opinion" is well explained and supported. The ALJ noted that Dr. McPhilimy was a primary care physician and had treated Plaintiff for over six years (Tr. 18, 20). The ALJ cited Dr. McPhilimy's treating notes at length (Tr. 18, 20-21). The ALJ acknowledged Dr. McPhilimy's finding that Plaintiff was limited to 20 pounds lifting on a "rare" basis, was unable to sit, stand, or walk for even two hours in an eight-hour workday, and should avoid temperature extremes (Tr. 18, 209-212). The ALJ noted Dr. McPhilimy's finding that Plaintiff would be expected to miss four days of work each month and the conclusion that Plaintiff was disabled from all work (Tr. 18, 209).

---

they are supported by the remainder of the record. 20 C.F.R. §§ 404.1520b; 416.920c. The "new rules, however, apply only to claims filed on or after March 17, 2017." *Hancock v. CSS*, 2017 WL 2838237, at *8 (W.D.Mich. July 3, 2017)(*citing Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01 (Jan 18, 2017)). Because current Plaintiff filed his claim well before March 17, 2017, SSR 96-2p applies.

Having acknowledged Dr. McPhilimy's opinion of disability level limitation, the ALJ provided "good reasons" for declining to adopt the more extreme findings. The ALJ pointed out that Dr. McPhilimy's opinion that Plaintiff was unable to walk even 200 feet was flatly contradicted by the physician's own treating records stating that Plaintiff walked a mile every evening for exercise (Tr. 20, 210, 214). The ALJ noted that in 2014, Plaintiff sought treatment from Dr. McPhilimy at only six-month intervals and that the November, 2014 treating notes did not reference edema or other lower extremity problems, despite Plaintiff's testimony that he was required to keep his right leg elevated for long periods each day (Tr. 20).

Plaintiff notes that Dr. Nims' consultative endorsement of a limitation to sedentary work stands at odds with the RFC for exertionally light work. *Plaintiff's Brief* at 10 (*citing* Tr. 16-20, 220). I note that the non-examining source (Dr. VanderHaagen) also found that Plaintiff was limited to sedentary work (Tr. 63-64). However, the ALJ provided an adequate rationale for rejecting the sedentary work findings, noting that the consultative and non-examining findings were based primarily on Plaintiff's "subjective complaints and . . . Dr. McPhilimy's blanket opinions" (Tr. 20). The ALJ noted that despite Dr. Nim's finding of mild lower right extremity weakness, the right leg showed no signs of "tenderness, redness, warmth, swelling, fluid, laxity, or crepitus . . ." (Tr. 19). The ALJ noted further that despite Dr. McPhilimy's extreme findings, neither the objective studies nor treating records supported a finding of disability (Tr. 20).

Moreover, an RFC for sedentary work, as found by Drs. Nims and VanderHaagen, rather than exertionally light work would not result in a disability finding. Despite Plaintiff's claim that he performed his former job at the exertionally light, medium, or heavy level of exertion, the VE testified that the job was customarily performed at the sedentary level (Tr.

47-48). As such, an RFC for sedentary work would not preclude a finding that Plaintiff could return to his former work. *See* SSR 82–61, 1982 WL 31387, *2 (1982)(Step Four determination that a claimant can resume his previous occupation can be supported by the finding that claimant can perform past relevant work as "actually performed," *or*, "as generally required by employers throughout the national economy").

### B. The ALJ's Credibility Determination

Plaintiff also argues that the administrative opinion reflects the ALJ's failure to "properly analyze [the] subjective complaints of pain," including Plaintiff's testimony that he was required to elevate his right leg multiple times each day. *Plaintiff's Brief* at 13-15.

The credibility determination, currently guided by SSR 96-7p, describes the process for evaluating symptoms.[5] As a threshold matter, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment ... that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2 (July 2, 1996). The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the

---

[5] In March, 2016, SSR 16-3p superceded SSR 96-7p. The newer Ruling eliminates the use of the term "credibility" from SSA policy. SSR 16-3p, 2016 WL 1119029, *1 (Mar. 16, 2016). The Ruling states that "subjective symptom evaluation is not an examination of an individual's character." Instead, ALJs are directed to "more closely follow [the] regulatory language regarding symptom evaluation." See 20 C.F.R. § 404.1529(c)(3), fn 7, *below*. Nonetheless, SSR 96-7p applies to the present determination, decided on July 2, 2015. *See Combs v. CSS*, 459 F.3d 640, 642 (6th Cir. 2006)(*accord* 42 U.S.C. § 405(a))(The Social Security Act "does not generally give the SSA the power to promulgate retroactive regulations").

testimony must be evaluated "based on a consideration of the entire case record."[6] *Id.*

Plaintiff's claim that the ALJ improperly discounted his allegations of physical restriction, based on the second prong of the credibility determination, does not provide grounds for remand. The ALJ acknowledged Plaintiff's report that he used a cane at the advice of his physician, needed to elevate the right leg three to four hours each day, and spent large portions of each day in his recliner (Tr. 17). He noted that the earlier records showed some degree of limitation as a result of the 1973 leg injury (Tr. 17). However, the ALJ permissibly concluded that the objective studies, treatment records, and consultative observations did not support Plaintiff's claim of disability level limitation (Tr. 18). The ALJ noted that the November, 2014 treating records did not make reference to lower extremity problems (Tr. 20). He noted that the application for benefits stated that Plaintiff stopped working on July 17, 2013 due to "industry reasons" rather than because of his physical condition (Tr. 20). The ALJ noted that Plaintiff's credibility was undermined by the discrepancy between his original account and the claims made to Dr. Nims at the consultative examination (Tr. 20, 157, 216). While Plaintiff's application states that his unemployment was due to "[t]ermination of position due to cut backs" followed by "[p]roblem working due to pain," the ALJ did not err in noting the job was terminated by the employer for primarily

---

[6] In addition to an analysis of the medical evidence, 20 C.F.R. § 404.1529(c)(3) lists the factors to be considered in making a credibility determination: "(i) . . . daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

financial reasons rather than Plaintiff's health problems (Tr. 20). Because the ALJ's credibility determination is well articulated and supported by the record, a remand is not warranted. "[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" *Cruse v.CSS,* 502 F.3d 532, 542 (6th Cir. 2007)(*citing Walters v. CSS*, 127 F.3d 525, 531 (6th Cir.1997)).

In closing, my recommendation to uphold the administrative decision should not be read to trivialize Plaintiff's legitimate limitations resulting from the 1973 accident. However, the ALJ's determination that Plaintiff was not disabled is supported by substantial evidence, and is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level. It should therefore not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## **CONCLUSION**

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #15] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #13] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D.

Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: November 7, 2017

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on November 7, 2017, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen