UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RICKY PANGBURN, | Case No. 16-13393 |
| Plaintiff, | SENIOR U.S. DISTRICT JUDGE<br>ARTHUR J. TARNOW |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | U.S. MAGISTRATE JUDGE<br>R. STEVEN WHALEN |
| Defendant. | |

**ORDER ADOPTING REPORT AND RECOMMENDATION [16]; OVERRULING PLAINTIFF'S OBJECTION [17]; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [13]; AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [15]**

Plaintiff Ricky Pangburn seeks judicial review of the decision of an Administrative Law Judge ("ALJ") denying his application for disability benefits. Plaintiff filed a Motion for Summary Judgment [Dkt. 13] on May 8, 2017. Defendant filed a Motion for Summary Judgment [15] on June 15, 2017.

On November 7, 2017, the Magistrate Judge issued a Report and Recommendation [16] recommending that the Court grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment. Plaintiff timely filed his Objection on November 21, 2017. [17].

For the reasons stated below, the Court **ADOPTS** the Report and Recommendation [16]. Plaintiff's Objection to the Report and Recommendation

[17] is **OVERRULED**. Plaintiff's Motion for Summary Judgment [13] is

**DENIED**. Defendant's Motion for Summary Judgment [15] is **GRANTED**.

## FACTUAL BACKGROUND

The R&R summarized the record as follows:

### PROCEDURAL HISTORY

On August 26, 2013, Plaintiff filed an application for DIB, alleging a disability onset date of July 17, 2013 (Tr. 124). After the initial denial of the claim, Plaintiff filed a request for an administrative hearing, held in Detroit, Michigan before Administrative Law Judge ("ALJ") Ena Weathers (Tr. 26). Plaintiff, represented by Frank Partipilo, testified, as did Vocational Expert ("VE") Pauline Pegram (Tr. 31-46, 46-53). On July 2, 2015, ALJ Weathers found that Plaintiff not disabled (Tr. 12-22). On August 4, 2016, the Appeals Council denied review (Tr. 3-7). Plaintiff filed for judicial review in this Court on September 19, 2016.

### BACKGROUND FACTS

Plaintiff, born June 20, 1952, was 63 when the ALJ issued her decision (Tr. 22, 124). He completed 12th grade and worked as a programmer from February, 1982 to June, 2013 (Tr. 158). He alleges disability due to arthritis with related pain and swelling (Tr. 156).

**A. Plaintiff's Testimony**

Plaintiff offered the following testimony:

He stood 5' 5" and weighed 201 pounds (Tr. 31). Although formerly right-handed, he was currently left-handed due to shoulder problems (Tr. 31). He was married and his youngest child was 32 (Tr. 32). He and his wife supported themselves with two "very small" retirement pensions and wife's Social Security Disability payments (Tr. 32). He held a valid driver's license and drove short distances twice a week (Tr. 32). His doctor had not imposed driving restrictions (Tr. 33). He did not experience problems reading or writing (Tr. 33). He served in the Army but was assigned to "light duty" after an accident (Tr. 34).

Plaintiff stopped working in July, 2013 when his job was terminated (Tr. 34). He had not sought other work due to his inability to sit for any meaningful period, the need to use a cane, a limp, and the need to elevate his leg three to four hours a day to alleviate pain and swelling (Tr. 34). His dismissal was "partially" attributable to his need for a cane (Tr. 35). He currently received treatment for hypertension and sporadic treatment for leg problems (Tr. 35). He took only Aleve and Advil for relief of swelling and body pain due to medication side effects of stomach ulceration from prescription pain medication (Tr. 35). He had not undergone surgery, attended physical therapy, or sought emergency treatment for the leg condition in "a long time" (Tr. 36). On a scale of one to ten, he experienced level "seven" to "nine" pain with the use of over-the-counter pain medication (Tr. 36). His doctor told him that his condition could not be improved (Tr. 37). He was unable to sit or stand for more than five to ten minutes and even with the use of a cane was unable to walk more than 100 yards (Tr. 37). He was able to lift up to 15 pounds with his left hand but was unable to perform any lifting on the right (Tr. 38).

Upon arising at around 6:30 a.m., he let out the dog, walked to the mailbox, had coffee, sat down, and had a brief walk around his yard (Tr. 38). He spent four to five hours each day in a reclining chair (Tr. 38). His housework was limited to doing dishes and tidying up (Tr. 39). As a result of nighttime sleep interruptions he took two afternoon naps (Tr. 39). He was able to dress himself but was "not good" at grocery shopping (Tr. 40). He accompanied his wife on her shopping trips (Tr. 39). He seldom used a computer due to his right arm falling asleep (Tr. 40).

In response to questioning by his attorney, Plaintiff reported that he used a cane due to right-sided weakness and because he was prone to stumbling (Tr. 40). His lower extremity condition had worsened since July, 2013 (Tr. 40). In his former work, Plaintiff spent around 50 percent of the workday moving machines (Tr. 41). The "programer" position consisted of both programming work and lifting up to 60 pounds (Tr. 42). During the workday, Plaintiff would sometimes "hide" from his supervisors to avoid heavy lifting (Tr. 42-43). His lower extremity pain was relieved by elevating his legs to heart level (Tr. 43). He was required to wear compression socks due to leg swelling (Tr. 43). At present, he spent up to six hours a day in a

recliner with his leg elevated (Tr. 44). Due to right shoulder pain, he was unable to do any right-sided overhead reaching (Tr. 44). His right arm fell asleep anywhere between five and thirty minutes after being after being [sic] in one position (Tr. 44). On a "bad" days [sic] occurring twice a week, he did not get dressed and spent the entire day in a couch or chair (Tr. 45).

**B. Medical Evidence**
    **1. Records Relating to Plaintiff's Treatment**

In August, 1978, Max Karl Newman, M.D. noted that as a result of a 1973 vehicle accident, Plaintiff experienced shortening of the right leg with atrophy and sensory peroneal neuropathy and motor neuropathy (Tr. 235).

March, 2012 imaging studies taken following a "slip and fall" at work showed "minimal degernerative joint disease" of the right knee and right little finger (Tr. 206). Imaging studies showed "mild to moderate degenerative arthritic changes" to the right shoulder (Tr. 206). May, 2013 treating records by Scott McPhilimy, D.O. note an evaluation for hyperlipidemia and hypertension (Tr. 214). Plaintiff reported that he walked approximately one mile each night with his daughter and granddaughters (Tr. 214). Plaintiff reported symptoms of anxiety, noting that he did "pretty well" taking Xanax on an as-needed basis (Tr. 214). Dr. McPhilimy noted the conditions of "pain in limb" and "chronic pain/traumatic injury to leg" (Tr. 215). He advised Plaintiff to continue to exercise on a daily basis for weight loss and cardiovascular fitness (Tr. 215). He gave Plaintiff a handicap placard (Tr. 207, 215).

Dr. McPhilimy completed an assessment of Plaintiff's work-related activities, finding that Plaintiff was precluded from all ladder climbing; could stoop and crouch on only a rare basis; climb stairs occasionally; and twist frequently (Tr. 209). He found that due to Plaintiff's physical limitations, he would be expected to miss work about four days each month (Tr. 209). He found that Plaintiff experienced "distractability" and concentrational problems due to pain and right leg weakness, numbness, and sensitivity (Tr. 209, 211). Dr. McPhilimy noted that Plaintiff "was deemed unfit for any physical endurance by VA . . ." (Tr. 209). He found that Plaintiff was unable to sit, stand, or walk for even two hours in an eight-hour workday and

would be required to stop work to walk every 15-20 minutes for up to 10 minutes at a time (Tr. 210). He found that Plaintiff would be required to elevate his left foot above heart level for 75 percent of the workday and was unable to walk for less than one block (Tr. 210-211). Dr. McPhilimy found that Plaintiff was further limited by concentrational problems due to poor sleep hygiene and the medication side effects of nausea and "GI problems"2 (Tr. 212).

Dr. McPhilimy's August, 2013 treating records note that Plaintiff had recently been terminated "as a result of economic downsizing" (Tr. 201). Plaintiff reported that his "lack of concentration" due to pain "had led to safety problems" at work (Tr. 201). Dr. McPhilimy noted that Plaintiff was currently taking only Tylenol, Aleve, and Ibuprofen due to the side effect of "gastric distress" while taking stronger pain medication (Tr. 201). Dr. McPhilimy noted "mild to moderate edema" despite Plaintiff's use of a support stocking (Tr. 202). Plaintiff declined a recommendation for prescribed pain medication due to its effect on his ability to drive and declined an offer for an orthopedic surgical evaluation (Tr. 203).

May, 2014 records by Dr. McPhilmy note Plaintiff's report of "increasing pain and difficulty with ambulation" (Tr. 239). Plaintiff reported that he had fallen recently but had not sustained injuries (Tr. 239). He reported that he was awaiting determinations "on disability through the state and through the VA" (Tr. 239). November, 2014 records by Dr. McPhilimy do not reference Plaintiff's leg or shoulder conditions (Tr. 242). The same month, Dr. McPhilimy composed a letter on behalf of the Plaintiff's application for VA benefits, opining that Plaintiff's right leg condition (resulting from the 1973 accident during Plaintiff's years of military service) worsened in the summer of 2013 (Tr. 246-249).

    **2. Non-Treating Sources**

In October, 2013, Ron Marshall, PH.D. performed a non-examining assessment of the records pertaining to Plaintiff's psychological limitations on behalf of the SSA, finding only mild limitation in activities of daily living, social functioning, and concentration, persistence, or pace (Tr. 61-62).

In December, 2013, Harold Nims, D.O. performed a consultative physical examination, noting Plaintiff's report of a 1973 accident in

which he sustained compound fractures of the right leg (Tr. (Tr. 216). Plaintiff reported ongoing right leg pain, swelling, and balance problems resulting in twenty to thirty falls in the past year (Tr. 216). He reported that he was required to elevate his right leg five to eight times each day due to swelling (Tr. 216). In addition to the lower extremity problems, Plaintiff alleged the inability to reach overhead on the right side due to moderate right shoulder pain (Tr. 216). He also reported chronic anxiety for which he used Xanax on an as-needed basis and the condition of uncontrolled hypertension (Tr. 216). Plaintiff stated that he was unable to walk more than half a block but was able to sit and stand without problems aside from swelling of the right lower extremity (Tr. 217). He reported that he prepared light meals, did light housecleaning, and shopped "when necessary" (Tr. 217).

Dr. Nims observed a "moderately antalgic gait" without unsteadiness or lurching (Tr. 218). He noted 4/5 right upper extremity strength and 5/5 of the left upper extremity (Tr. 219). He noted no atrophy (Tr. 219). In the lower extremities, Dr. Nims observed 4/5 strength on the right and 5/5 on the left (Tr. 219). Plaintiff was able to squat and bend without difficulty (Tr. 220). Dr. Nims concluded that Plaintiff was capable of "nonstrenuous type activities performed in a sedentary type setting" with "the ability to elevate his right leg from time to time during the workday" (Tr. 220).

Later the same month, Eric VanderHaagen, D.O. performed a non-examining assessment of the Plaintiff's physical conditions, finding the ability to lift a maximum of 10 pounds, sit for six hours a day and stand or walk for two, and perform limited pushing and pulling in the right-sided upper and lower extremities (Tr. 63-64). Dr. VanderHaagen found Plaintiff could climb ramps and stairs, balance, and stoop frequently; kneel, crouch, and crawl occasionally; and never climb ladders, ropes, or scaffolds (Tr. 64). He found that Plaintiff was limited to occasional overhead reaching with the right upper extremities (Tr. 65). Dr. VanderHaagen found that Plaintiff could do his past relevant work as a programmer as actually performed (Tr. 65).

**C. Vocational Expert Testimony**

Citing the *Dictionary of Occupational Titles* ("*DOT*"), VE Pegram classified Plaintiff's previous work as a tool programmer (combined with the job requirements of a drafter) as skilled and sedentary (exertionally "light" as described in the application for benefits and as exertionally "heavy" in Plaintiff's testimony)3 (Tr. 47-48). The ALJ then posed the following question to the VE, describing an individual of Plaintiff's age, educational level, and work experience:

> [A]ssume a hypothetical individual with the past jobs that you just described. Further assume that this individual is limited to light work and is unable to climb ladders, ropes, or scaffolds; can occasionally push and pull with the right lower extremity and right upper extremity; must avoid concentrated exposure to humidity and extreme cold; have occasional overhead reach bilaterally. Would this hypothetical person be able to perform their past work? (Tr. 48).

The VE replied that the above-described individual would be able to perform Plaintiff's past relevant work as described in Plaintiff's application for benefits and as described in the *DOT,* modified by her own professional experience to the extent that she found that the overhead reaching limitations would not preclude the past relevant work (Tr. 49). She found that the need to change positions from standing to sitting for "one to two minutes every hour or two hours" and the use of a cane to ambulate on uneven surfaces would not change her testimony (Tr. 49). The VE testified that if the same individual were additionally limited by the need to be off task 25 percent of the workday due to "pain, fatigue, and the effects of medication," the individual would be unable to perform Plaintiff's former work or any other competitive work (Tr. 50).

In response to questioning by Plaintiff's attorney, the VE testified that the need to be off-task for more than 15 percent of the workday, elevate the legs above heart level for 75 percent of each workday, miss four days of work each month, or, the inability to sit, stand, or walk for only two hours in an eight-hour workday would preclude all work (Tr. 51-52). The VE testified that the inability to work around "moving . . . and dangerous machinery" on an even occasional basis would eliminate Plaintiff's past relevant work as "actually performed" (Tr. 53).

**D. The ALJ's Decision**
Citing the medical records, the ALJ determined that Plaintiff experienced the severe impairments of "neuritis and pain of the right lower extremity; reflex sympathetic dystrophy; chronic right shoulder pain due to osteoarthritis; and obesity" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15). The ALJ found that although Plaintiff used anti-anxiety medication (on an as needed basis) his psychological limitations were "mild" (Tr. 15).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for light work with the following additional limitations:

> Claimant is unable to climb ladders, ropes or scaffolds. Claimant's right upper and lower extremities are restricted to occasional pushing and pulling. Clamant must avoid concentrated exposure to humidity and extreme cold. Clamant is limited bilaterally to occasional overhead reaching. Claimant must be able to change from standing to seated position or vice versa for one to two minutes every hour to two hours without interference with work product. Claimant requires the use of a cane to ambulate on uneven surfaces (Tr. 16).

Citing the VE's testimony, the ALJ found that Plaintiff could perform his past relevant work including the job duties of programmer and drafter as generally performed in the national economy and as actually performed (Tr. 21, 49).

The ALJ discounted the allegations of disability. The ALJ noted that Plaintiff's testimony that he was required to lift up to 60 pounds at his former job was contradicted by his report made at the time of the DIB application (Tr. 21). The ALJ accorded only "partial weight" to Dr. McPhilimy's assessment on the basis that it "lack[ed] support in contemporaneous treatment records" and the "gross inconsistencies" between the assessment and Dr. McPhilimy's own treatment records (Tr. 20). The ALJ noted that Plaintiff's allegations of disability were undermined by Plaintiff's ability to walk a mile each night with his daughter and granddaughters (Tr. 18). The ALJ noted that despite the 1973 accident, Plaintiff was able to work for many years (Tr. 20). She

cited Plaintiff's testimony that his job termination resulted at least in part from "economic and industry reasons" (Tr. 20).

**STANDARD OF REVIEW**

The Court reviews "specific written objections" to a Magistrate Judge's Report and Recommendation on a dispositive motion *de novo*. *See* 28 U.S.C. §636(b)(1)(c). Vague, generalized objections are not entitled to a *de novo* review. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id.* "A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge." *Aldrich v. Bock*, 327 F.Supp. 2d 743, 747 (E.D. Mich. 2004). Similarly, an objection that simply disagrees with the Magistrate Judge's conclusion "without explaining the source of the error" is not a valid objection." *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Judicial review of a decision by a Social Security ALJ is limited to determining whether the factual findings are supported by substantial evidence and whether the ALJ employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The ALJ's factual findings "are conclusive if supported by substantial evidence." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 243 (6th Cir. 1987). "Substantial evidence is defined as more than a scintilla of

evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). So long as the ALJ's conclusion is supported by substantial evidence, a court must "defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

## ANALYSIS

Plaintiff raises the following Objections to the R&R:

- The ALJ's opinion fails to address whether Plaintiff would need to elevate his right leg.
- There is no medical evidence to support the conclusion that Plaintiff was able to work at the light level.
- The ALJ's light RFC determination is based solely on her own opinion and is not based upon substantial evidence.
- There's no explanation as to why Dr. Nims' findings and limitations were not followed.
- There's no testimony as to how the additional limitations, as well as the need to elevate Plaintiff's right leg, would affect the universe of sedentary jobs.
- The R&R incorrectly notes that the consultative examiner's opinions were rejected by the ALJ when she noted that said findings were based primarily on Plaintiff's subjective complaints and Dr. McPhilimy's blanket opinions. In fact, the ALJ never rejected the consultative examiner's findings.

The first four objections are improper because they simply reiterate the arguments presented to the Magistrate Judge in the summary judgment briefing.

*See Aldrich*, 327 F.Supp. 2d at 747. Accordingly, they are overruled. The remaining two objections are discussed more in depth below.

I. **The questions posed by the ALJ to the Vocational Expert**

This objection is unclear. Plaintiff maintains that the record lacks

> testimony as to how the additional limitations noted by the ALJ, as well as the need to elevate the right leg would effect [sic] the universe of sedentary jobs. These questions (regarding sedentary jobs or of need to elevate the legs in sedentary capacity) were never provided to the Vocational expert by the ALJ.

(Pl.'s Obj. at 4-5).

Plaintiff's objection is vague and difficult to understand. He argues that certain questions "were never provided to" the VE, but fails to articulate exactly what those questions are and how they caused him harm. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

It appears that Plaintiff takes issue with the information and hypotheticals provided by the ALJ to the Vocational Expert. To that extent, the Sixth Circuit has held that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).

Page **11** of **14**

Plaintiff does not explain how the ALJ's questioning and hypotheticals were faulty. The Court finds that Plaintiff has forfeited whatever argument he intended to present for failure to develop it. *See, e.g., Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 618 n.9 (6th Cir. 2014) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)). Furthermore, as the Magistrate Judge outlined in the R&R, substantial evidence supported the ALJ's conclusion as to Plaintiff's work abilities and limitations. The opinion of Dr. McPhilimy, Plaintiff's treating doctor, was correctly accorded only partial weight because it "lack[ed] support in contemporaneous treatment records" and "gross inconsistencies" existed between his opinion and his treatment records. (Tr. 20). Furthermore, Dr. McPhilimy's November 2014 treatment records made no reference to lower extremity problems, in contrast with Plaintiff's testimony that he had to keep his right leg elevated for long periods of time. *Id.* In addition, the ALJ's implicit rejection of Dr. Nims' findings was justified. For example, although Dr. Nims opined that Plaintiff suffered mild lower right extremity weakness, Plaintiff's right leg showed no signs of "tenderness, redness, warmth, swelling, fluid, laxity, or crepitus." (Tr. 19).

In sum, to the extent that Plaintiff challenges the ALJ's reliance on the vocational expert's testimony, the Objection is **OVERRULED**.

## II. The ALJ's treatment of the consultative examiner's findings

Plaintiff next claims that

> The Report & Recommendation notes that the Consultative examiner's opinions were rejected by the ALJ when she noted that said findings were based "primarily on Plaintiff's subjective complaints and . . . Dr. McPhilimy's blanket opinions (TR 20)" (R&R 13). This is not correct.

(Pl.'s Obj. at 6).

Again, Plaintiff fails to explain how the Magistrate Judge's alleged error caused him harm. *See Shinseki*, 556 U.S. at 409.

Plaintiff further claims that "there has never been an explanation as to why Dr. Nims' findings and limitations were not followed." (Pl.'s Obj. at 7). However,

> An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Local Defense Systems-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999) (internal quotations omitted).

That the ALJ did not explain or spell out every credibility finding does not change the fact that she carefully weighed all of the evidence in reaching the conclusion that Plaintiff is not disabled. Accordingly, Plaintiff's Objection is **OVERRULED**.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the Report and Recommendation [16] is **ADOPTED** and entered as the findings and conclusions of the Court. Plaintiff's Objection to the Report and Recommendation [17] is **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [15] is **GRANTED**. Plaintiff's Motion for Summary Judgment [13] is **DENIED**.

**SO ORDERED**.

Dated: February 21, 2018

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge